UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHERIE FOUNTAINE, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-00801 |
| § | |
| U.S. BANK NATIONAL ASSOCIATION § | |
| AS INDENTURE TRUSTEE FOR TOWD § | |
| POINT MORTGAGE TRUST 2019-4, § | |
| § | |
| Defendant. § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 27, 2023, Plaintiffs Cherie Fountaine and Hailey King ("Plaintiffs") sued Defendant U.S. Bank National Association, as indenture trustee for TOWD Point Mortgage Trust 2019-4 ("U.S. Bank") in the 129th Judicial District Court of Harris County, seeking to enjoin a foreclosure sale of property located at 26814 Glenfield Hollow Lane in Cypress, Texas (the "Property"). Doc. #1. U.S. Bank removed the case to this Court on March 3, 2023. *Id.* On May 1, 2023, the Court orally granted Plaintiffs' Motion for Preliminary Injunction (Doc. #9), thereby enjoining U.S. Bank from foreclosing on the Property until the case could be heard and determined on its merits. *See also* Doc. #40. The above-captioned case proceeded to trial before this Court on January 29, 2024. After considering the pleadings, evidence, arguments of counsel, and the applicable legal authorities, the Court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). Any findings of fact that are more properly conclusions of law are so deemed. Any conclusions of law that are more properly findings of fact are so deemed. All relief not granted is expressly denied.

## FINDINGS OF FACT

The following facts have been established by a preponderance of the evidence.

1. On August 24, 2006, Efrehem Del Rosario ("Del Rosario") executed a general warranty deed to borrow $200,000.00 to purchase the Property (the "Loan"). Trial Ex. D-1. The same day, Del Rosario and his wife also executed a note, wherein he promised to repay the Loan plus interest (Trial Ex. D-2), and a deed of trust that granted a lien against the Property to secure repayment of the Loan (Trial Ex. D-3).

2. The deed of trust is assigned to U.S. Bank. Trial Ex. D-6 at U.S. Bank 0034.

3. Select Portfolio Servicing, Inc. ("SPS") has serviced the Loan since October 2019. Doc. #47 ¶ 8.

4. Del Rosario conveyed the Property to Brandan Schild ("Schild"). Trial Exs. D-7, D-8.

5. The conveyance to Schild was a "wrap transaction," where Del Rosario remained the named borrower on the Loan, but Schild was responsible for paying it.

6. On November 16, 2021, Schild entered a contract to sell the Property to JJP Capital, LLC for $400,000.00. Trial Ex. D-9.

7. On December 15, 2021, JJP Capital, LLC assigned the real estate sales contract for the Property to Plaintiffs and agreed to provide them with a loan to purchase the Property from Schild. Trial Ex. D-10.

8. Texas Title was the title company that closed the sale of the Property to Plaintiffs. Doc. #46, Ex. 1 ¶ 5; Doc. #47 ¶ 12.

9. Prior to closing on the Property, Sandy Thompson ("Thompson"), the escrow officer for Texas Title who assisted with the closing, received a payoff statement dated November 22, 2021 (the "November 22 Payoff Statement"). Doc. #46, Ex. 1 ¶ 5; *see*

*also* Trial Ex. P-1. The November 22 Payoff Statement expired on December 22, 2021, and stated that the total amount due was $188,201.42. Trial Ex. P-1. SPS generated the November 22 Payoff Statement. Doc. #47 ¶ 16. However, it was Schild who sent the November 22 Payoff Statement to Thompson via email. *Id.* ¶ 20. Thompson did not request the November 22 Payoff Statement from SPS or Schild. *Id.*

10. Because the November 22 Payoff Statement was not provided to her directly from SPS, Thompson stated that she could not rely upon it during the closing. *Id.* ¶ 21.

11. As such, on or about December 15, 2021, Thompson placed multiple calls to SPS requesting a faxed copy of an updated payoff statement. Doc. #46, Ex. 1 ¶ 8. To obtain a payoff statement, it was customary for Thompson to call the bank or mortgage company requesting a faxed copy of the payoff statement, although she admitted that some banks or mortgage companies also email payoff statements.

12. On December 15, Thompson received a payoff statement via fax, as requested (the "December 15 Payoff Statement"). The December 15 Payoff Statement expired on December 31, 2021, and the total amount due was $189,859.46. Trial Ex. P-2. The December 15 Payoff Statement looks substantially identical to the November 22 Payoff Statement that Thompson previously received. Doc. #46, Ex. 1 ¶ 9.

13. The sale of the Property to Plaintiffs closed on December 15, 2021. Doc. #46, Ex. 1 ¶ 11; Doc. #47 ¶ 12.

14. On December 16, Texas Title wired $189,859.46, the amount in the December 15 Payoff Statement, to SPS. Doc. #46, Ex. 1 ¶ 13; Trial Ex. P-3 at 2; Trial Ex. P-4.

15. SPS received the $189,859.46 wire and applied the payment to the Loan. Doc. #47 ¶ 37.

16. U.S. Bank asserts that the December 15 Payoff Statement was not generated by SPS and was altered by someone else. Doc. #47 ¶¶ 27–29. There is no evidence before the Court that affirmatively identifies who U.S. Bank believes altered the payoff statement.

17. Neither Thompson nor Plaintiffs had any reason to believe that the December 15 Payoff Statement was not generated by SPS.

18. U.S. Bank contends that the authentic payoff statement that SPS generated was also dated December 15, 2021, but it expired on January 14, 2022, and the total amount due was $226,733.41. *Id.* ¶¶ 25–26; *see also* Trial Ex. D-16. Neither Thompson nor Plaintiffs ever received this payoff statement.

19. U.S. Bank avers that an unpaid loan balance of $39,730.35 remains as of March 1, 2022. Doc. #47 ¶ 37. As such, U.S. Bank intends to foreclose on the Property pursuant to a power of sale contained in the deed of trust. Doc. #46, Ex. 1 ¶ 1.

## CONCLUSIONS OF LAW

20. If a mortgage servicer submits an incorrect payoff statement to a title insurance company that results in the mortgage servicer requesting an amount that is less than the correct payoff amount, the mortgage servicer or mortgagee does not deliver a corrected payoff statement in accordance with Subsection (f), and the mortgage servicer receives payment in the amount specified in the payoff statement, the difference between the amount included in the payoff statement and the correct payoff amount:
    (1) remains a liability of the former mortgagor owed to the mortgagee; and
    (2) if the payoff statement is in connection with:
        (A) the sale of the real property:
            (i) the deed of trust or other contract lien securing an interest in the property is released;
            (ii) within a reasonable time after receipt of payment by the mortgagee or mortgage servicer, the mortgagee or mortgage servicer, as applicable, shall deliver to the title company a release of the deed of trust or other contract lien securing an interest in the property . . . .

TEX. FIN. CODE. § 343.106(g).

21. On December 15, 2021, Thompson requested that SPS fax an updated payoff statement

to her, and Thompson received the December 15 Payoff Statement via fax, as requested. Neither Thompson nor Plaintiffs had any reason to believe that the December 15 Payoff Statement was not generated or faxed by SPS. Thompson requested the payoff statement according to her customary procedures and practices, and she received a payoff statement that was substantially identical to the November 22 Payoff Statement she'd previously received.

22. There is no evidence before the Court that affirmatively identifies who allegedly sent the December 15 Payoff Statement to Texas Title. As such, based on the record, the Court concludes that SPS provided the December 15 Payoff Statement to Texas Title. TEX. FIN. CODE § 343.106(g).

23. The December 15 Payoff Statement requested an amount that was less than the correct payoff statement, but SPS did not provide a corrected payoff statement in accordance with Subsection (f) of § 343.106 of the Texas Finance Code.

24. Section 343.106(f) requires, "If a mortgage servicer or mortgagee discovers that a payoff statement is incorrect, the mortgage servicer or mortgagee may correct and deliver the statement on or before the second business day before the specified proposed closing date." TEX. FIN. CODE § 343.106(f).

25. A corrected payoff statement was not sent on or before the second business day before the December 15 closing.

26. On December 16, 2021, SPS received a wire transfer with the amount specified in the December 15 Payoff Statement. TEX. FIN. CODE § 343.106(g).

27. As such, the requirements of the Texas Finance Code § 343.106(g) were met. Accordingly, the unpaid loan balance of $39,730.35 is the responsibility of the former

mortgagor, Schild. *Id.*

28. Further, in accordance with § 343.106(g)(2)(A), because the December 15 Payoff Statement was paid in connection with the sale of the Property, the Court hereby ORDERS that the deed of trust, recorded as Document No. 20060001008 in the Real Property Records of Harris County, Texas (Doc. #46, Ex. 2), is EXTINGUISHED and is NO LONGER AN ENCUMBRANCE on the Property, more specifically described as follows:

> Lot six (6) in Block One (1), of Cypress Creek Lakes, Sec. 4, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Film Code No. 567077 of the Map Records of Harris County, Texas.

It is so ORDERED.

SEP 1 3 2024
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge