UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHERIE FOUNTAINE,** *et al.*,<br><br>    plaintiffs,<br><br>v.<br><br>**U.S. BANK NATIONAL ASSOCIATION,**<br>as indenture trustee for TOWD Point<br>Mortgage Trust 2019-4,<br><br>    defendant. | §<br>§<br>§<br>§<br>§<br>§   Case 4:23-cv-801<br>§<br>§<br>§<br>§<br>§<br>§ |

## U.S. BANK'S OPPOSED EMERGENCY MOTION FOR STAY PENDING APPEAL

U.S. Bank National Association, as indenture trustee for TOWD Point Mortgage Trust 2019-4 (**U.S. Bank**), requests the court stay the court's final judgment—labeled findings of facts and conclusions of law on September 13, 2024 (dkt. 48) and became a final judgment by operation of law on February 10, 2025—pursuant to Federal Rule of Civil Procedure 62:

### I.   SUMMARY

1.   This case was tried to the court on January 29, 2024. On September 13, 2024, the court entered findings of fact and conclusions of law. The findings of fact and conclusions of law resolve all claims against all parties, but no final judgment has been entered pursuant to Federal Rule of Civil Procedure 58(a)(1). The findings of fact and conclusions of law now constitute a final judgment by operation of law (**final judgment**). Fed. R. App. P. 4(a)(7)(A)(ii); Fed. R. Civ. P. 58(c). U.S. Bank filed a notice to appeal the final judgment. (dkt. 52.) U.S. Bank is entitled to a stay of the final judgment pending its appeal because (**i**) it is likely to succeed on the merits of the appeal, (**ii**) it will suffer irreparable harm if its interest in the property is extinguished during the appeal, (**iii**) the plaintiffs will not suffer any injury, and (**iv**) the public interest favors a stay.

## II.    BACKGROUND

### A.    Undisputed factual background.

2. On August 24, 2006, Efrehem Del Rosario borrowed $200,000 (**loan**) to purchase the property at 26814 Glenfield Hollow Lane, Cypress, Texas 77433 (**property**). (trial trans. at 64:11-64:23, **ex. A**; deed, **def. ex. 1**.)

3. The loan is evidenced by a note executed by Mr. Del Rosario promising to repay the loan, plus interest (**note**), and a deed of trust executed by Mr. Del Rosario, together with Maricris Del Rosario, granting a lien against the property to secure repayment of the note (**deed of trust**). (trial trans. at 64:24-66:8, **ex. A**; note, **def. ex. 2**; deed of trust, **def. ex. 3**.)

4. The loan was modified twice, in 2008 and 2016. (trial trans. at 66:9-67:2, **ex. A**; 2008 modification, **def. ex. 4**; 2016 modification, **def. ex. 5**.)

5. The 2016 modification stipulated the unpaid principal balance of the loan as of August 1, 2016 was $190,753.94 and would accrue interest at 6.125%. (trial trans. at 67:23-68:1, **ex. A**; 2016 modification at ¶ 1, **def. ex. 5**.)

6. The 2016 modification required Mr. Del Rosario repay the loan by making monthly principal and interest payments of $1,066.22, as well as escrow for property taxes and insurance premiums, beginning August 1, 2016 and continuing on the first day of each month thereafter until July 1, 2056. (2016 modification at ¶¶ 2-3, **def. ex. 5**.)

7. Except as expressly modified, all other terms of the note and deed of trust remained in full force and effect. (2016 modification at ¶ 6, **def. ex. 5**.)

8. The deed of trust is assigned of record to U.S. Bank. (trial trans. at 69:7-19, **ex. A**; assignments, **def. ex. 6**.)

9. Select Portfolio Servicing, Inc. (**SPS**) has serviced the loan since October 31, 2019. (trial trans. at 62:23-63:1, **ex. A**.)

10. The Del Rosarios conveyed the property to Brandan Schild by separate deeds, the first of which was executed by Mr. Del Rosario on June 29, 2018 and the second of which was executed by Ms. Del Rosario on November 1, 2021. (trial trans. at 69:23-70:1, **ex. A**; deed, **def. ex. 7**; deed, **def. ex. 8**.)

11. On November 16, 2021, Mr. Schild entered into a contract to sell the property to JJP Capital, LLC for $400,000. (sales contract, **def. ex. 9**.)

12. JJP Capital assigned the contract to Ms. Fountaine and Ms. King and agreed to provide a loan for Ms. Fountaine and Ms. King to purchase the property from Mr. Schild. (assignment, **def. ex. 10**.)

13. Texas Title closed the transaction on December 15, 2021. (trial trans. at 9:25-10:6, **ex. A**.)

14. As of December 15, 2021, the loan was paid through August 31, 2020 (due for September 1, 2020 payment). (trial trans. at 79:20-80:11, **ex. A**; payment history, **def. ex. 13**.)

15. From September 1, 2020 through December 15, 2021, no valid payments were made on the loan; every attempted payment made on the loan during this period was returned for insufficient funds. (payment history, **def. ex. 13**.)

16. In November 2021, at least three attempts to pay more than $30,000 on the loan were made, each of which were initially credited and applied to the loan, but were ultimately returned due to insufficient funds and reversed off of the loan. (trial trans. at 93:3-96:17, **ex. A**; payment history, **def. ex. 13**.)

17. The last November 2021 payment which was returned for insufficient funds was reversed off the loan on November 29, 2021 and the loan remained due for the September 1, 2020 payment. (trial trans. at 102:13-21, **ex. A**; payment history, **def. ex. 13**.)

18. During the period of time the November 2021 payments were being applied and later reversed off the loan, SPS generated a payoff statement dated November 22, 2021. (trial trans. at 88:7-89:21 **ex. A**; Nov. 22, 2021 payoff statement, **def. ex. 12**.)

19. While the November 22, 2021 payoff statement would have accurately stated the amount to pay off the loan on those dates, the amounts included the application of payments which were later returned for insufficient funds and reversed off the loan and, as a result, did not reflect the true amount to pay off the loan. (trial trans. at 88:7-24; 92:2-18, **ex. A**; payment history, **def. ex. 13**.)

20. SPS did not provide the November 22, 2021 payoff statement to Texas Title. (trial trans. at 79:15-19, **ex. A**; Nov. 22, 2021 payoff statement, **pl. ex. 1**.)

21. Texas Title admits it did not request the November 22, 2021 payoff statement from SPS but received it unsolicited from Mr. Schild via e-mail. (trial trans. at 24:12-20, **ex. A**.)

22. Texas Title admits it knew it could not rely on the November 22, 2021 payoff statement because it was not provided by the mortgage servicer. (trial trans. at 27:2-8, **ex. A**.)

23. Texas Title admits it did not rely on the November 22, 2021 payoff statement and did not pay the amount stated therein. (trial trans. at 27:9-11, **ex. A**.)

24. SPS did not receive a payment from Texas Title or anyone else for the payoff amounts stated in the November 22, 2021 payoff statement. (trial trans. at 35:20-36:2, **ex. A**.)

25. On December 15, 2021, SPS generated a December 15, 2021 loan payoff statement (**real December 15 payoff statement**) and sent it to Mr. Del Rosario via facsimile number 800-878-5776. (trial trans. at 71:20-72:25, **ex. A**; real Dec. 15, 2021 payoff statement, **def. ex. 16**.)

26. The $226,733.41 payoff amount stated in the real December 15 payoff statement was the correct amount due on the loan at the time. (trial trans. at 75:6-11, **ex. A**.)

27. Texas Title received a December 15, 2021 payoff statement which reflected a payoff in the amount of $189,859.46 (**altered December 15 payoff statement**). (trial trans. at 27:12-29:8, **ex. A**; altered Dec. 15, 2021 payoff statement, **pl. ex. 2**.)

28. The altered December 15 payoff statement was not generated by SPS, was not provided by SPS to Texas Title or anyone else and the payoff amount stated was not the true amount due on the loan. (trial trans. at 27:12-29:8, **ex. A**.)

29. Neither Texas Title nor plaintiffs presented any evidence SPS generated the altered December 15, 2021 payoff statement, provided it to Texas Title or that the amount stated was the correct amount due on the loan. (trial trans. at 27:12-29-8;32:11-23, **ex. A**.)

30. Texas Title admits it did not request any payoff statement from SPS by mail, email of facsimile and did not receive any payoff statement from SPS by mail or email. (trial trans. at 27:21-28:1, **ex. A**.)

31. The facsimile line at the top of each page of the altered December 15 payoff statement show it was transmitted by facsimile number "18008785776" to Texas Title's facsimile number 18322244325. (trial trans. at 28:6-13, **ex. A**; altered Dec. 15, 2021 payoff statement, **pl. ex. 2**.)

32. 1-800-878-5776 is not a telephone or facsimile number which has ever been owned by, used by or associated with SPS. (trial trans. at 28:21-24, **ex. A**.)

33. Texas Title relied on the altered December 15, 2021 payoff statement and wired $189,859.46 to SPS on December 16, 2021. (trial trans. at 30:6-9, **ex. A**.)

34. On December 16 and twice on December 20, 2021, SPS received telephone calls from a man identifying himself as Mr. Del Rosario and represented to SPS that the payment from Texas Title was not intended to be a payoff, but that he had sold another property, wanted the payment from that sale to be wired to SPS and applied to the loan to pay all past due amounts with the remainder to pay down the principal balance. (trial trans. at 81:14-22; 83:24-84:3, **ex. A**; U.S. Bank's Rule 103(a)(2) Offer of Proof & call recordings, **def. exs. 18, 19, 20**, cited therein and tendered to the court, dkt. 43.)

35. There was no dispute U.S. Bank and SPS, on the one hand, and Mr. Del Rosario or anyone else, on the other hand, about the amount due on the loan at the time SPS applied the $189,859.46 payment. (trial trans. at 32:11-19, **ex. A**.)

36. There was no agreement by U.S. Bank and SPS, on the one hand, and Mr. Del Rosario or anyone else, on the other hand, that U.S. Bank and SPS would accept less than that the full amount due on the loan. (trial trans. at 32:20-23, **ex. A**.)

37. After SPS applied the $189,859.46 payment, the loan had unpaid principal balance of $39,730.35 and a due date of March 1, 2022. (trial trans. at 83:24-84:3, **ex. A**.)

38. After SPS applied the $189,859.46 payment, no valid payments were made on the loan; any attempt to make payment on the loan after applying the funds were returned for insufficient funds. (trial trans. at 80:14-17, **ex. A**.)

**B.   Procedural background.**

39. Ms. Fountaine and Ms. King sued U.S. Bank for a declaration the "deed of trust is fully satisfied and is no longer an encumbrance on the property." (orig. pet. at prayer, dkt. 1-2.)

40. A bench trial was held on January 29, 2024 at which time the undisputed evidence identified in paragraph 2 through 38, above, was presented through the testimony of Ms. Fountaine, a representative from Texas Title, Sandy Thompson, and a representative from SPS and U.S. Bank, Michelle Simon, as well as exhibits.

41. Three exhibits were excluded: call recordings between a person identifying himself as Mr. Del Rosario and SPS on December 16 and 20, 2021.  (recordings, (unadmitted) **def. exs. 18, 19, 20**; U.S. Bank's Rule 103(a)(2) Offer of Proof, dkt. 43.)

42. U.S. Bank timely made an offer of proof by physically tendering the exhibits to the court, providing a written summary of their contents and explaining the recordings were relevance (the objection asserted by plaintiffs) because they corroborate (**a**) the correct amount of the payoff as of December 15, 2021 was $226,733.41, not $189,859.46 (refuting any claim by plaintiffs that Texas Title paid the loan in full), (**b**) there was no dispute about the amount owed (refuting any claim by plaintiffs that there could be an accord and satisfaction), and (**c**) there was no agreement by SPS to accept less than the full amount due; in fact it shows the opposite, that SPS and the caller knew the loan had a balance due after application of the $189,859.46 (also refuting any claims there could be an accord and satisfaction).  (*Id.*)

43. On September 13, 2024, the court entered its findings of fact and conclusions of law.  (findings, dkt. 48.)  The findings agree Texas Title relied upon the altered December 15 payoff statement and no other.  (findings at ¶¶ 10, 12, 14, dkt. 48.)

44. The court's findings further agree Texas Title did not request any payoff statement from SPS by mail, email of facsimile and did not receive any payoff statement from SPS by mail or email.  (findings at ¶¶ 11-12, 21, dkt. 48.)

45. The court's findings further agree "[t]here is no evidence before the Court that affirmatively identifies who allegedly sent the [altered] December 15, Payoff Statement to Texas Title." (findings at ¶ 22, dkt. 48.)

46. The court then inexplicably concluded that "based on the record . . . SPS provided the [altered[]] December 15 Payoff Statement to Texas Title." (findings at ¶ 22, dkt. 48.)

47. The court then "ORDER[ED] that the deed of trust, recorded as Document No. 20060001008 in the Real Property Records of Harris County, Texas (Doc. #46, Ex. 2), is EXTINGUISHED and is NO LONGER AN ENCUMBRANCE on the Property." (findings at ¶ 28, dkt. 48.) The findings also state "[a]ll relief not granted in expressly denied." (*Id.* at p. 1, dkt. 48.)

48. On November 8, 2024, plaintiffs moved for entry of a final judgment, but it has not been ruled on. (motion for entry of judgment, dkt. 49.)

### III.   ARGUMENTS & AUTHORITIES

**A.   Findings constitute an appealable final judgment.**

49. An order is appealable if it reflects the court's "'intent[ion] to have nothing further to do'—with . . . the case (if a conventional appeal)." *Ueckert v. Guerra*, 38 F.4th 446, 450 (5th Cir. 2022). The notice of appeal must be filed with the district clerk within 30 days after entry of the judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A).

50. If Federal Rule of Civil Procedure 58(a) requires a separate document, a judgment or order is entered for purposes of rule 4 when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs—the judgment or order is set forth on a separate document, or 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a). Fed. R. App.

P. 4(a)(7)(A)(ii); *see also* Fed. R. Civ. P. 58(c) ("for purposes of these rules, judgment is entered at the following times . . . (2) if a separate document is required, when the judgment is entered in the civil docket under rule 79(a) and the earlier of these events occurs (A) it is set out in a separate document, or (B) 150 days have run from the entry in the civil docket.")

51. Rule 58(a) requires "[e]very judgment or amended judgment [] be set out in a separate document," with certain exceptions not applicable in this case. Fed. R. Civ. P. 58(a). "To be 'separate,' a judgment must be apart from any document detailing either the court's factual findings or the legal basis of the court's ruling; it may not be part of a memorandum or opinion." *Creaghe v. Albemarle Corp*., 98 Fed. Appx. 972, 973 (5th Cir. 2004).

52. The findings constitute an appeal order because it reflects the court's intention to have nothing further to do with this case. It granted plaintiffs' the only permanent relief requested—to declare the deed of trust is no longer an encumbrance on the property and ordered that "[a]ll relief not granted is expressly denied." (dkt. 48.) There is neither any indication the court intends to take further action in this case nor that there is any further action to take.

53. The failure to enter a final judgment as a separate document does not affect the finality of the findings; it merely extends U.S. Bank's appeal deadline. *Ueckert*, 38 F.4th at 453 ("In sum, then, parties have a 180-day window to file a notice of appeal if the district court neglected to enter the judgment in a separate document.") (citing Fed. R. App. P. 4(a)(7)(A)(ii)); *see also Constien v. U.S.*, 628 F.3d 1207, 1210 (10th Cir. 2010) ("The separate-document requirement does not affect the finality of a court order; failure to comply with the requirement merely extends the time for a losing party to file a notice of appeal."); Fed. R. App. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.")

54. Because no separate document was filed pursuant to rule 58(a), the findings became a final judgment for purposes of appeal on 150 days after it was entered on the docket, or February 10, 2025. *Ueckert*, 38 F.4th at 453; Fed. R. App. P. 4(a)(7)(A)(ii).

**B.     Standard to stay enforcement of a judgment.**

55. "[A]s part of the traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 421 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)). "A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken*, 556 U.S. at 421.

56. A party may obtain a stay on the enforcement of a *monetary* judgment "by providing a bond or other security." Fed. R. Civ. P. 62(b). Some form of security—either through a supersedeas bond or other means of securing the stay—is required before a court will stay execution of a judgment pending appeal so as to protect "'the non-appealing party's rights pending appeal.'" *Faciane v. Petrochem Field Servs. Inc.*, 2019 U.S. Dist. LEXIS 113445, 2019 WL 2995871, at *2 (E.D. La. July 9, 2019).

57. But "[n]onmonetary judgments [like the one here] are not automatically stayed but can be stayed in the district court's discretion if the moving party shows: (**1**) that it is likely to succeed on the merits; (**2**) that it would suffer irreparable injury if the stay were not granted; (**3**) that granting the stay would not substantially harm the other parties; and (**4**) that granting the stay would serve the public interest." *Halliburton Energy Servs. v. NL Indus.*, No. H-05-4160, 2008 U.S. Dist. LEXIS 54263, *15-16 (S.D. Tex. 2008); *see also Sundown Energy, L.P. v. Haller*, No. 10-4354, 2015 U.S. Dist. LEXIS 79221, at *9 (E.D. La. 2015) ("Nonmonetary judgments, on the

other hand, are not automatically stayed but may be stayed in the court's discretion.")). Each of these factors weighs in favor of U.S. Bank.

    (i)    **U.S. Bank is likely to succeed on the merits of its appeal because there is no evidence it provided the disputed payoff or that Texas Title complied with Texas law.**

58.    The plaintiffs' contention throughout this lawsuit has been that U.S. Bank is required to release its deed of trust even if Texas Title relied on an altered December 15 payoff statement when it wired the $189,959.46. The court found that:

> On December 15, 2021, Thompson requested that SPS fax an updated payoff statement to her, and Thompson received the December 15 Payoff Statement via fax, as requested. Neither Thompson nor Plaintiffs had any reason to believe that the December 15 Payoff Statement was not generated or faxed by SPS. Thompson requested the payoff statement according to her customary procedures and practices, and she received a payoff statement that was substantially identical to the November 22 Payoff Statement she'd previously received.
>
> There is no evidence before the Court that affirmatively identifies who allegedly sent the December 15 Payoff Statement to Texas Title. As such, based on the record, the Court concludes that SPS provided the December 15 Payoff Statement to Texas Title. Tex. Fin. Code § 343.106(g).

(Dkt. 48. ¶¶ 21-22.)

59.    But the evidence does not support this conclusion. A mortgagee—like U.S. Bank—may only be compelled to release its deed of trust after receiving payment from a title company based on an incorrect payoff statement if the title company requested and received the incorrect payoff statement from the mortgage servicer in compliance with Texas Finance Code section 343.106 and its implementing rules at Title 7, Texas Administrative Code chapter 155. Tex. Fin. Code § 343.106(g).

60.    The plaintiffs produced no evidence that Texas Title received the altered December 15 payoff statement from SPS. The only payoff statement SPS generated for this loan on December 15, 2021 was the real December 15 payoff statement sent to Mr. Del Rosario via facsimile number

800-878-5776. (trial trans. at 71:20-72:25, **ex. A**) The altered payoff statement was then faxed to Texas Title from that same facsimile number. (trial trans. at 28:6-29:8, **ex. A**.) That facsimile number is not a telephone or facsimile number which has ever been owned by, used by, or associated with SPS. (trial trans. at 28:21-24, **ex. A**.) There is no evidence to the contrary.

61.     In order for the court to appropriately conclude that U.S. Bank's lien is "extinguished" and no longer an "encumbrance" on the property it would have needed to find that Texas Title first complied with the statute and rules governing payoff statements—not its own "customary procedures and practices." (Dkt. 48 at ¶ 21.) But the court made no such finding because Texas Title admits not doing so. (trial trans. at 27:18-23, **ex. A**.)

62.     Under Texas Finance Code section 343.106:

> The finance commission shall adopt rules governing requests by title insurance companies for payoff information from mortgage servicers related to home loans and the provision of that information, including rules prescribing a standard payoff statement form that must be used by mortgage servicers to provide those payoff statements."
>
> In adopting rules under Subsection (b), the finance commission shall require a mortgage servicer who receives a request for a payoff statement with respect to a home loan from a title insurance company to deliver the requested payoff statement on the prescribed form within a time specified by finance commission rule, which must allow the mortgage servicer at least seven business days after the date the request is received to deliver the payoff statement.

Tex. Fin. Code § 343.106(b)-(c).

63.     A title company's request for a payoff statement "shall be in writing and submitted to the mortgage servicer by mail, email, or fax." Title 7, Tex. Admin. Code § 155.2(a). "Requests for a payoff statement shall, at a minimum, include the following (**1**) name of the mortgagor, (**2**) physical address of the underlying collateral of the loan, or a legal description of the property, and (**3**) proposed closing date of the loan." *Id*. "Upon receipt of a valid request made under subsection (a) of this section, a mortgage servicer shall provide, in writing, by mail or email, the payoff

statement information for the home loan specified in the request which must be provided on the prescribed payoff statement form [] or in a substantially similar format which contains all elements not indicated as optional on the prescribed payoff statement form." *Id*. at § 155.2(b).

64. Subject to certain exceptions, "if the mortgage servicer provides a completed payoff statement form that meets the requirements of this section and rules adopted under this section in response to a request for a payoff statement, the mortgage servicer or mortgagee may not, on or before the proposed closing date, demand that a mortgagor pay an amount in excess of the payoff amount specified in the payoff statement." *Id*. at § 343.106(e). "If a mortgage servicer submits an incorrect payoff statement to a title insurance company that results in the mortgage servicer requesting an amount that is less than the correct payoff amount, the mortgage servicer or mortgagee does not deliver a corrected payoff statement in accordance with subsection (f), and the mortgage servicer receives payment in the amount specified in the payoff statement, the difference between the amount included in the payoff statement and the correct payoff amount (1) remains a liability of the former mortgagor owed to the mortgagee, and (2) if the payoff statement is in connection with (A) the sale of the real property, (i) the deed of trust or other contract lien securing an interest in the property is released." *Id*. at § 343.106(g).

65. U.S. Bank would be required to release its lien even if the payoff is incorrect, *if and only if* Texas Title requested the payoff statement from SPS "in writing and submitted to the mortgage servicer by mail, email, or fax" and received it from SPS "by mail or email." Title 7, Tex. Admin. Code § 155.2(a). But plaintiffs provided no evidence Texas Title complied with this requirement, established that the altered December 15, 2021 payoff statement was prepared by SPS, or provided by SPS to Texas Title. (trial trans. at 27:12-29-8, **ex. A**.); *see also Safeco Ins. Co. v. Hiles*, Civil Action No. 3:10-CV-1289-D, 2011 U.S. Dist. LEXIS 88082, at *10 n.4 (N.D.

Tex. 2011) ("a plaintiff filing a declaratory judgment action bears the burden of proof at trial."). Here, the court found only that "Thompson requested that SPS fax an updated payoff statement to her . . . according to her customary procedures and practices." (Dkt. 48 at ¶ 21.) And, the court concluded that there was "no evidence before [it] that affirmatively identifies who allegedly sent the December 15 Payoff Statement to Texas Title." (*Id.* at ¶ 22.)

66. Because the plaintiffs produced no evidence Texas Title requested or received the December 15 payoff statement from SPS in compliance with Texas Finance Code section 343.106 and Title 7, Texas Administrative Code section 155—U.S. Bank is likely to succeed on the merits of its appeal.

### (ii) U.S. Bank will be irreparably harmed by the enforcement of the court's judgment.

67. The second factor, whether the U.S. Bank will be irreparably injured if the stay is not granted, cuts heavily in favor of U.S. Bank. "The loss of rights in real property is considered an irreparable injury." *Fisher v. Cooke*, No. 05-21-00243-CV, 2022 Tex. App. LEXIS 6160, at *18 (Tex. App.—Dallas Aug. 22, 2022, no pet.); *see also Williard Capital Corp. v. Johnson*, No. 14-16-00636-CV, 2017 Tex. App. LEXIS 7844, at *7 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) ("[W]e have recognized the potential loss of rights in real property is a probable, imminent, and irreparable injury which qualifies a party for a temporary injunction.")).

68. U.S. Bank was assigned the deed of trust securing the repayment of a note executed by Efrehem Del Rosario. (Dkt. 48 at ¶¶ 1-2.) If the plaintiffs are not stayed from enforcing this court's ruling, U.S. Bank will be completely deprived of its property interest. *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) ("The deprivation of an interest in real property constitutes irreparable harm."). For this reason, U.S. Bank will be irreparably harmed.

    **(iii)**    **Plaintiffs will not be harmed by a granting of this stay.**

69. The harm that the plaintiffs may experience is nonexistent if the court grants this stay. This is true, when a stay "seeks to maintain the status quo pending a final determination on the merits of the suit." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). The status quo would be preserved—not upended—if this court stays the enforcement of its ruling as the plaintiffs' use and enjoyment of the property will not be impacted. There will therefore be no harm to the plaintiffs while the judgment is stayed pending appeal.

    **(iv)**    **Staying the court's judgment will serve the public interest.**

70. The last factor, whether the public interest is best served by a stay of the judgment, also weighs in favor of U.S. Bank as it is simply asking to be paid what is contractually owed. "[T]he public interest favors requiring parties to a contract to honor their contractual obligations." *Moody Nat'l CI Grapevine S., L.P. v. TIC Tex. Two 21, L.L.C.*, No. H-19-0711, 2020 U.S. Dist. LEXIS 39103, at *14 (S.D. Tex. 2020). For those who participate in the home closing process: lenders, borrowers, mortgage servicers, and title insurance companies alike, compliance with the law is of utmost importance. The balance of equities merits a stay as it would be a disservice to the public interest in allowing a title company to avoid responsibility for not adhering to Texas law.

## IV.    PRAYER

U.S. Bank requests the court stay its final judgment entered September 19, 2024. U.S. Bank is likely to succeed on the merits of its claim as the plaintiffs provided no evidence that Texas Title complied with its legal obligations that would otherwise require U.S. Bank to release its lien. That coupled with U.S. Bank's showing of irreparable harm, minimal (and frankly non-existent harm) to the plaintiffs, and a compelling public interest show that a stay is warranted pending appeal.

Date: March 11, 2025                                    Respectfully submitted,

                                             */s/ Michael J. McKleroy*
                                             Michael J. McKleroy,
                                             SBN: 24000095, FBN: 576095
                                             mmckleroy@hinshawlaw.com
                                             --*Attorney in Charge*
                                             C. Charles Townsend,
                                             SBN: 24028053, FBN: 1018722
                                             ctownsend@hinshawlaw.com
                                             Alfredo Ramos,
                                             SBN: 24110251, FBN: 3687680
                                             framos@hinshawlaw.com
                                             HINSHAW & CULBERTSON LLP
                                             1717 Main Street, Suite 3625
                                             Dallas, Texas 75201
                                             Telephone: 945-229-6380
                                             Facsimile: 312-704-3001

                                             **ATTORNEYS FOR U.S. BANK**

## CERTIFICATE OF CONFERENCE

      Pursuant to local rule 7.1(D), I hereby certify that prior to filing U.S. Bank's motion, I conferred by email with Mr. Keller regarding the requested relief in the motion. Having received no response prior to filing, we are marking the plaintiffs as opposed to the requested relief.

                                             */s/ Alfredo Ramos*
                                             Alfredo Ramos

## CERTIFICATE OF SERVICE

      A true and correct copy of this document was served on March 11, 2025 as follows:

Michael E. Keller
The Keller Firm
5540 Harvest Hill Road, Suite 233
Dallas, Texas 75230
**VIA CM/ECF SYSTEM**

                                             */s/ Michael J. McKleroy, Jr.*
                                             Michael J. McKleroy, Jr.